IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DOUGLAS M. SAYLOR, | ) | Civil No. 3:10-cv-01313-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Amy J. Cross
       549 NW 2nd Avenue
       Canby, OR 97013

       Linda S. Ziskin
       Ziskin Law Office
       P.O. Box 2237
       Lake Oswego, OR 97035

           Attorneys for Plaintiff

       S. Amanda Marshall, U.S. Attorney

FINDINGS AND RECOMMENDATION - 1

Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Mathew W. Pile
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

Simone P Cain
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A702
Dallas, TX 75202

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

      Plaintiff Douglas Saylor brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a decision of the Commissioner of Social Security (the Commissioner)

denying his applications for Social Security Disability Insurance Benefits (DIB) and

Supplemental Security Income Benefits (SSI) under the Social Security Act (the Act).  Plaintiff

seeks an Order reversing the decision of the Commissioner and remanding the action to the

Social Security Administration for an award of benefits.  In the alternative, Plaintiff seeks an

Order remanding the case to the Agency for further proceedings.

      For the reasons set out below, the Commissioner's decision should be affirmed.

**Procedural Background**

FINDINGS AND RECOMMENDATION - 2

Plaintiff filed applications for benefits on January 19, 2006, alleging that he had been disabled since November 6, 2005, because of loss of memory, pain, weakness, and fatigue.[1] After his applications were denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

On March 26, 2009, a hearing was held before ALJ John Madden, Jr.  On April 8, 2009, ALJ Madden, Jr. issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on September 7, 2010, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff is seeking review of that decision.

**Factual Background**

Plaintiff was born on December 25, 1958, and was 50 years old at the time of the hearing before the ALJ.  He completed high school and has past relevant work experience as a contractor, carpenter, and heavy equipment operator.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

---

[1]Plaintiff alleged these impairments in his initial applications.  He subsequently clarified that his applications are based upon combined impairments which include a brain injury, degenerative disc disease, headaches, hearing loss, and anxiety.

FINDINGS AND RECOMMENDATION - 3

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A

claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of the claimant's case

proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work

he or she has done in the past.  A claimant who can perform past relevant work is not disabled.

If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

FINDINGS AND RECOMMENDATION - 4

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that

the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this

burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

      At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## **Medical Record**

      The ALJ addressed the relevant portions of the extensive medical record in detail.  The

parties have not reviewed and summarized the medical record in separate sections in their

memoranda, but instead have cited particular portions of the record only in the context of their

arguments.  In this Findings and Recommendation I also will address only the medical evidence

that is relevant to the parties' arguments.

## **ALJ's Decison**

      At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset of his disability on November 6, 2005.

      At the second step, the ALJ found that Plaintiff's severe impairments included

degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease (COPD),

post-concussive disorder, adjustment disorder, and hearing loss.

      At the third step, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or equaled a presumptively disabling impairment set out in the "listings," 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the residual functional capacity

> to perform light work as defined in 20 C.F.R. 401.1567(b) and 416.967(b), with pushing and pulling within the light exertional weight limits.  The claimant is limited to occasional stooping, crouching, and climbing stairs, ramps, ladders, ropes, and scaffolds.  He has no visual, manipulative, or communicative limitations.  Due to the recent evidence of hearing loss, the claimant should not work in an environment where he is exposed to further damage to his hearing.  The claimant cannot perform detailed or complex duties and should work in a stable environment with a set routine.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the severity of his symptoms and limitations were not credible to the extent they were inconsistent with this assessment of his functional capacity.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could not perform any of his past relevant work.

Based upon the hearing testimony of a Vocational Expert (VE), at the fifth step the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy.  He cited small products assembler, cashier, and office helper jobs as examples of such work.  Because the ALJ found that Plaintiff could perform this work, he concluded that Plaintiff was not disabled within the meaning of the Act.

**<u>Standard of Review</u>**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

FINDINGS AND RECOMMENDATION - 6

reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ failed to properly assess his severe impairments at step two of the disability analysis, erred in concluding that his severe impairments did not meet or equal a presumptively disabling impairment set out in the "listings," failed to properly assess his RFC, failed to properly evaluate the opinions of Plaintiff's examining doctors, failed to adequately support his conclusion that Plaintiff was not wholly credible, erred in his evaluation of evidence from lay witnesses, and erred in relying on the VE's testimony to conclude that he

could perform "other work" at step five of his analysis.

1. **Step Two Finding**

      Plaintiff contends that the ALJ erred in failing to find that his headaches and anxiety disorder were "severe" impairments, and in failing to make a required "severity finding" concerning Plaintiff's generalized anxiety at step two.

      The "severity" analysis at step two of the disability determination process "is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). An impairment is 'not severe' if the evidence establishes that it has "no more than a minimal effect on an individual's ability to work." Id. To be characterized as "severe," an impairment must last for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1505(a), 416.905(a); 404.1509, 416.909; 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

      Plaintiff has not shown that the ALJ erred in concluding that his headaches and anxiety disorder were not "severe" impairments. As the ALJ correctly noted in his decision, though Plaintiff complained of headaches associated with sinusitis in June, 2008, during a follow-up visit two months later he denied further problems with headaches. In addition, during the hearing before the ALJ, Plaintiff denied having headaches.

      Plaintiff correctly notes that relevant regulations require ALJs to assess the functional limitations set out in the "B" criteria of mental listings if there is evidence that a claimant has a record of mental impairment, and require that the "special technique" for evaluating these impairments be used at every step of the disability analysis process. 20 C.F.R § 404.1520a.

FINDINGS AND RECOMMENDATION - 8

Plaintiff also correctly notes that, though ALJs are no longer required to complete a PRFT form, they must "document application of the technique in the decision." 20 C.F.R. §§ 404.1520a(e)(2), 416.920(a(e)(2). Regulations require that the decision issued by an ALJ

> incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding of the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id.

Plaintiff contends that this action must be remanded for further proceedings because the ALJ "failed to employ the agency mandated special technique to properly determine the severity of Plaintiff's mental impairments" and failed to make findings regarding the severity of his anxiety disorder. He argues that the ALJ's assessment of the "B" criteria at step three of the disability analysis was insufficient because it could not remedy the failure to address the severity of impairments at step two, and because the ALJ failed to cite evidence supporting his finding that Plaintiff had only "mild" limitations in Activities of Daily Living and Social Functioning and moderate limitations in Concentration, Persistence, and Pace.

Based upon a careful review of the ALJ's decision and the relevant portions of the medical record, I conclude that the ALJ did not err in his assessment of Plaintiff's mental impairments. Though the ALJ did not set out his findings in the narrative form that Plaintiff asserts was required, his decision demonstrates a sufficient evaluation of Plaintiff's mental impairments at step two. In his evaluation of the medical evidence concerning Plaintiff's mental impairments, the ALJ discussed the consultative psychological evaluation that M. John Givi, Ph.D, Psy.D, conducted in March, 2006. The ALJ noted that Plaintiff had reported no history of treatment or diagnosis, and that Dr. Givi opined that Plaintiff's intelligence was in the low

average range, rated Plaintiff's Global Assessment of Functioning (GAF) score at 60, and diagnosed Plaintiff with a mild generalized anxiety disorder.

The ALJ also noted that Steven Dickinson, Psy.D, had conducted a neuropsychological evaluation in May, 2006, during which Plaintiff had reported that he could attend to his activities of daily living and care for himself without assistance.  He noted that Dr. Dickinson questioned Plaintiff's effort, and that validity testing suggested malingering.  He noted that, though Dr. Dickinson thought that the evidence suggested some deficits in multitasking, abstract reasoning, and fatigue following an incident during which Plaintiff had lost respiration in November, 2005, he found that the evidence did not meet the full diagnostic criteria for post concussional syndrome.  The ALJ also cited Dr. Dickinson's observation that Plaintiff did not have the symptoms of an organic mental disorder, and noted that Dr. Dickinson had assigned Plaintiff a GAF of 62 and had opined that Plaintiff's mild post concussion syndrome would likely diminish with therapy.  He added that the most recent treatment records did not indicate that Plaintiff exhibited or complained of ongoing cognitive difficulties and showed that Plaintiff demonstrated an adequate ability to communicate and understand.

The ALJ here reviewed the medical record concerning Plaintiff's mental impairments, and that review supported his assessment of Plaintiff's related  functional impairments.  The ALJ found that Plaintiff's severe mental impairments included a post concussive disorder and an adjustment disorder.  His determination that Plaintiff's anxiety disorder was not a "severe" impairment was supported by his citation to Dr. Givi's conclusion that Plaintiff's generalized anxiety disorder was mild.  As the Commissioner correctly notes, mild psychological impairments are generally considered nonsevere.  20 C.F.R. §§ 401.1520a(d)(1), 416.920a(d)(1); see Saelee v Chater, 94 F.3d 520, 522 (9th Cir. 1996) (ALJ correctly characterized mild

depression as "nonsevere").

Exclusion of a diagnosis from a list of severe impairments at step two is significant only if the impairment caused additional functional limitations not reflected in the ALJ's assessment. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ adequately set out the basis for his assessment of Plaintiff's mental impairments and the functional limitations they caused, and the medical evidence here does not indicate that Plaintiff's mild anxiety disorder caused additional limitations not accounted for in the ALJ's assessment. Under these circumstances, this action should not be remanded to the Agency based upon an alleged failure to properly assess Plaintiff's mental impairments at step two.


2. **Finding that Plaintiff's impairments did not meet or equal impairment in the Listing**

Plaintiff contends that the ALJ's finding at step three was incomplete, and that there is no evidence that the ALJ considered his impairments in combination. He further asserts that his impairments equal Listing 12.04, or alternatively, meet Listing 1.04 when the listing for depression is added to elements of the Listings for spine disorders and hearing impairment.

I disagree. Plaintiff has the burden of establishing that his impairments meet or equal a listed impairment, Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005), and has the burden of producing medical evidence establishing that all of the medical findings required for a listed impairment are satisfied. Bowen v. Yuckert, 482 U.S. 137, 153-157 (1987). An ALJ is not required "as a matter of law, to state why a claimant failed to satisfy every different section of the Listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (citing Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)). An ALJ is required to discuss the combined effects of a claimant's impairments, and compare them with any listing in making an

equivalency determination, only if the claimant presents evidence supporting equivalence.
Burch, 400 F.3d at 683.

      The ALJ here supported his conclusion that Plaintiff did not have an impairment that met or equaled a listed impairment with references to the medical record. In the absence of a showing by Plaintiff that his impairments alone or in combination met or equaled the requirements of any listed impairment, the ALJ was not required to do more. The ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment was supported by the medical record, and Plaintiff's challenge at step three fails.

### 3. **RFC Analysis**

      Plaintiff contends the ALJ's RFC analysis was incomplete because the ALJ failed to include limitations related to hearing loss, erred in concluding that his hearing loss did not preclude work as a cashier, and failed to properly account for his moderate limitation in concentration, persistence and pace. Plaintiff contends that the action should be remanded for an award of benefits because the limitation in concentration, persistence, and pace establishes that he cannot perform any jobs that exist in substantial numbers in the national economy.

      Again, I disagree. A careful review of the record supports the conclusion that the ALJ complied with applicable regulations and Social Security Rulings concerning RFC analysis by considering the relevant evidence, medical opinions, and testimony and adequately accommodating the impairments he found. The ALJ accounted for Plaintiff's hearing loss by eliminating work without hearing protection in noisy areas. In concluding that Plaintiff could work as a cashier, office helper, or assembler, the ALJ correctly noted that there was no evidence

FINDINGS AND RECOMMENDATION - 12

in the record that Plaintiff had "difficulty communicating at a conversation level."  Plaintiff testified that he had never requested a hearing aide, and that no doctor had ever prescribed one for him.  Under these circumstances, Plaintiff has not shown that the ALJ failed to account for his hearing loss or erred in concluding that his hearing loss would not prevent him from performing jobs that the VE had identified as within his functional capacity.

In support of his contention that the ALJ did not adequately account for his moderate limitations in concentration, persistence, and pace, Plaintiff cites several decisions in which courts have concluded that a restriction to "simple" work does not adequately account for these limitations.  However, those decisions are distinguishable.  Here, based upon Plaintiff's mental impairments, the ALJ precluded "detailed or complex duties" and restricted Plaintiff to work "in a stable environment with a set routine."  The ALJ cited substantial evidence in the medical record supporting the conclusion that these restrictions accurately reflected the limiting effects of Plaintiff's mental impairments.

In support of his argument that the ALJ failed to properly assess his RFC, Plaintiff also relies on Dr. Givi's opinion that his problems with  memory, orientation, and thought would "preclude successful employment."  However, the Commissioner correctly notes that the determination whether a claimant's functional limitations are disabling is an issue reserved to the ALJ, and that a medical source's opinion as to whether a claimant is disabled is not entitled to "any special significance."  See SSR-96-5p; 20 C.F.R. §§ 404.1527(e)(1) & (3); 416.927(e)(1) & (3).  As discussed below, the ALJ provided sufficient support for his rejection of Dr. Givi's opinion concerning Plaintiff's ability to perform work related functions.  The ALJ provided sufficient support for his own determination that the restrictions he included in the RFC assessment adequately accounted for Plaintiff's mental impairments.

4. **ALJ's evaluation of opinions of Plaintiff's examining doctors**

Plaintiff contends that the ALJ "misinterpreted, omitted and changed the doctors' findings in order to support his theory of non-disability."  He asserts that the ALJ erroneously concluded that Dr. Dickinson found evidence of malingering during a neuropsychological evaluation, improperly ignored much of Dr. Givi's report, and improperly rejected Dr. Givi's opinion concerning the severity of his mental impairments.  Plaintiff contends that the action should be remanded for an award of benefits because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Givi's opinion that he is disabled, there are no outstanding issues to be resolved, and it is clear from the record that the ALJ would be required to find that Plaintiff is disabled if Dr. Givi's opinion were credited.

A careful review of Dr. Dickinson's report does not support Plaintiff's contention that the ALJ misinterpreted this examining medical source's statements.  Dr. Dickinson stated that Plaintiff "responded to the Test of Memory and Malingering in a manner that resulted in a clear indication that he likely had not given a fully motivated effort during testing."  In an apparent reference to this statement, the ALJ stated that Dr. Dickinson questioned Plaintiff's effort "and validity testing suggested malingering."  As the Commissioner correctly asserts, this was a reasonable interpretation of Dr. Dickinson's statement.  The Commissioner further correctly notes that, if evidence is susceptible to more than one rational interpretation, an ALJ's reasonable conclusion as to its meaning must be upheld.  Burch, 400 F.3d at 679; Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ responsible for resolving conflicts in evidence, determining credibility of medial opinions).  Dr. Dickinson diagnosed Plaintiff with post concussional disorder and an adjustment disorder, and the ALJ found that both of these were severe impairments.  The ALJ credited Dr. Dickinson's evaluation of Plaintiff's mental

impairments, and imposed functional restrictions that were consistent with Dr. Dickinson's findings.

Plaintiff correctly asserts that the ALJ did not explicitly discuss all the material included in Dr. Givi's six page Comprehensive Psychodiagnostic Examination.  However, an ALJ is not required to discuss all the evidence presented, and instead need only explain the rejection of "'significant probative evidence . . . .'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)).  The ALJ noted that, based upon Plaintiff's reports,  Dr. Givi had estimated that Plaintiff operated in the low average intelligence range, reduced from a pre-morbid level of average intelligence.  The ALJ observed that Dr. Givi had not administered tests to corroborate these conclusions, and correctly noted that Dr. Givi did not diagnose Plaintiff with a cognitive disorder.  Plaintiff cites the Weschler Memory Scale III (WMS-III, orientation subtest) and a Wide Range Achievement Test-3 (WRAT-3, Reading subtest) that Dr. Givi administered as objective evidence supporting Dr. Givi's assessment.  However, the Commissioner correctly notes that these tests would not corroborate Plaintiff's reports concerning his intelligence.  As discussed below, the ALJ adequately supported his conclusion that Plaintiff's statements concerning the severity of his symptoms and impairments were not wholly credible.  This is significant, because an ALJ may reject medical opinion that is largely based upon a claimant's self-reports that are properly discounted.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Givi's opinion as to the severity of Plaintiff's mental impairments was inconsistent with other assessments in the medical record.  Accordingly, the ALJ was required support his rejection of Dr. Givi's opinion with specific and legitimate reasons that were supported by substantial evidence in the record.  See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)

FINDINGS AND RECOMMENDATION - 15

(ALJ must provide specific, legitimate reasons, supported by substantial evidence, for rejecting contradicted opinion of examining doctor).  The ALJ's reasons here satisfied that requirement.

In his decision, the ALJ did not explicitly refer to Dr. Givi's opinion that Plaintiff was not capable of "successful employment" at that time because of problems with memory, orientation, and thought.  However, as noted above, whether a claimant's functional limitations preclude work is an issue reserved to the ALJ, and opinions of medical sources concerning the ultimate question of disability are entitled to no "special significance." The ALJ adequately addressed the medical evidence, including Dr. Givi's report.  His RFC analysis was supported by objective evidence in the medical record, and the limitation to work in a stable environment with a set routine, involving no detailed or complex tasks, adequately accommodated those limitations that he found were established by the record.  Under these circumstances, remand for further proceedings or for an award of benefits is not appropriate.

5. **ALJ's assessment of Plaintiff's credibility**

As noted above, the ALJ found that Plaintiff's statements concerning the severity of his symptoms and limitations were not credible to the extent that they were inconsistent with his assessment of Plaintiff's RFC.  Plaintiff contends the ALJ erred in first assessing his RFC, and then accepting or rejecting his statements depending on whether they were consistent with that assessment.  I disagree.  The statement in question does not reflect the order in which the ALJ analyzed Plaintiff's credibility and RFC, but instead simply indicates which testimony the ALJ found less than wholly credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If

a claimant produces medical evidence of an underlying impairment, the ALJ  may not discredit the claimant's testimony concerning the severity of symptoms merely because it is not supported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc)).  If a claimant produces the requisite medical evidence and there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); SSR 96-7p.  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.  An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities of daily living.  Thomas, 278 F.3d at 958-59 (9th Cir. 2002).

Dr. Dickinson's observation that Plaintiff "responded to the Test of Memory and Malingering in a manner that resulted in a clear indication that he likely had not given a fully motivated effort during testing" could be construed as evidence of malingering.  However, assuming that it is not, the ALJ here provided clear and convincing reasons for concluding that Plaintiff's statements concerning the severity of his symptoms and impairments were not wholly

FINDINGS AND RECOMMENDATION - 17

credible.  The ALJ cited medical records supporting the conclusion that, though he initially

exhibited some slowness in response and poor recall following his narcotic overdose, Plaintiff

did not sustain the permanent brain damage alleged.  The ALJ also cited inconsistent statements

Plaintiff had made concerning his physical limitations.  He noted that, though in his present

application Plaintiff alleged that he could not lift or carry even minimal weights, he later

acknowledged that he could lift up to 40 pounds occasionally.  The ALJ also noted that Plaintiff

was able to attend to his personal care and that Plaintiff's more recent treatment records did not

substantiate the ongoing cognitive difficulties alleged.

The ALJ here provided the support that was required for his credibility determination.


6. **Lay witness evidence**

Plaintiff's parents and Plaintiff's girlfriend, Catherine Salazar, submitted letters

describing a narcotic overdose that occurred while Plaintiff was hospitalized and information

that they had been provided concerning that event.  Ms. Salazar also submitted a Third Party

Questionnaire concerning Plaintiff's activities, capabilities, and impairments provided by the

Agency.

Plaintiff contends that, though the ALJ mentioned the letters from these third party

witnesses, he did not "acknowledge or discuss" the Third Party Questionnaire that Ms. Salazar

submitted.  He argues that this action should be remanded for an award of benefits because of

this omission.

A careful reading of the ALJ's decision does not support the conclusion that the ALJ

ignored the questionnaire that Ms. Salazar submitted, or failed to provide reasons for discounting

her responses.  The ALJ's reference to the questionnaire is not a model of clarity.  However,

FINDINGS AND RECOMMENDATION - 18

though the ALJ did not identify this evidence as a "Third Party Questionnaire," he cited its

Exhibit number (10E) in his discussion of Plaintiff's ability to "attend to his personal care" and

reported need for "frequent reminders to perform basic daily tasks." The ALJ followed his

citation to Exhibit 10 with a discussion of treatment records showing that Plaintiff had not

suffered permanent brain damage, and that his cognitive functioning had improved significantly

over time after the overdose.  These records supported the conclusion that Plaintiff's

impairments were less severe than described in the questionnaire Ms. Salazar completed.

An ALJ must provide reasons that are "germane" for discounting the statements of third

party witnesses.  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ's discussion

of inconsistencies between the severity of impairment noted in the questionnaire provided to Ms.

Salazar and evidence in the medical record satisfied that requirement.


7. **Medical-Vocational Guidelines**

Plaintiff contends that the ALJ erred in failing to find him disabled pursuant to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  He argues that,

because he was 50 years old before the time of the hearing, had no transferable skills, and could

not perform the full range of light work, the ALJ was required to address whether the remaining

occupational base is "closer to the occupational base of a sedentary grid rule, or whether the

remaining occupational base is closer to that of the light grid rule."

In support of this argument, Plaintiff relies on SSR 83-12(2).  This Ruling provides, in

relevant part, that if the "exertional capacity" of a claimant who is more than 50 years old and

has no transferable skills is significantly reduced, a finding of "disabled" may be justified.

Plaintiff asserts that, though he should be found to be disabled as of the date of his alleged onset

FINDINGS AND RECOMMENDATION - 19

of disability, in the alternative, based upon SSR 83-12 and the Medical Vocational Guidelines (the "grids") he should be found to be disabled when he became 50 years old.

This argument fails.  As the Commissioner correctly notes, SSR 82-12 provides that, if a claimant's "exertional limitations are somewhere 'in the middle' in terms of regulatory criteria for exertional ranges of work," the assistance of a vocational specialist is "advisable."  Plaintiff's exertional limitations fell between the grid rules for light and sedentary work, and the ALJ consulted a VE to determine whether jobs that he could perform existed in substantial numbers in the national economy.  The ALJ's reliance on a VE's testimony was appropriate under these circumstances.  See, e.g., Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000) (holding that, if claimant's exertional limitation falls between two grid rules, ALJ satisfies requirement to determine remaining occupational base by consulting VE).  The VE's testimony that an individual with Plaintiff's RFC could work as an assembler, cashier, or office helper constituted substantial evidence supporting the conclusion that Plaintiff was not disabled within the meaning of the Act.

## Conclusion

A judgment should be entered affirming the Commissioner's decision denying Plaintiff's applications for benefits and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due May 14, 2012.  If no objections are filed, then the Findings and Recommendation

FINDINGS AND RECOMMENDATION - 20

will go under advisement on that date.

   If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

   DATED this 26th day April, 2012.


                                     /s/ John Jelderks
                                    John Jelderks
                                    U.S. Magistrate Judge